IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHELLY ANN BOWMAN,

      Plaintiff,

v.                                                            Case No. 14-2358-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

      Defendant.


MEMORANDUM AND ORDER


Shelly Ann Bowman applied for Disability Insurance Benefits (DIB) under Title II

of the Social Security Act, 42 U.S.C. §§ 401-433 and Supplemental Social Security (SSI)

under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3), on February 8, 2011. The

Commissioner of Social Security denied her application upon initial review (Tr. 92-100,

105-116), and Bowman sought review by an Administrative Law Judge (ALJ). Following

a hearing on December 19, 2012, the ALJ determined that Bowman was not disabled

within the meaning of the Act. (Tr. 27-36). The decision of the Commissioner became

final when the Appeals Council declined Bowman's request for review (Tr. 1-3) on May

15, 2014. (Tr. 1-6).

Bowman then filed this appeal, raising three arguments. First, she contends that the ALJ erred in her consideration of the opinion offered by Dr. Vivek Sahgal,[1] her treating physician. Second, she argues that the ALJ's assessment of her mental and physical residual functional capacity is not supported by substantial evidence. Third, the ALJ erred in relying on the testimony of the vocational expert. For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Plaintiff-claimant Bowman was born on September 4, 1966, and has stated that she became disabled beginning June 1, 2012, due to ailments including hepatitis C, anxiety, depression, attention deficit disorder (ADD), and post-traumatic stress disorder (PTSD). She has previously worked as a Goodwill store clerk, a day care teacher, an assistant restaurant manager, and a nursing home caretaker.

The ALJ found that Bowman suffers from the severe impairments of anxiety and panic disorder, attention deficit hyperactivity disorder (ADHD), hepatitis C infection, and migraine headaches. (Tr. 30). However, these impairments did not meet the standards for listed impairments as defined by 20 C.F.R. §§ 404.1520(b) and 416.920(b). Bowman retains the residual functional capacity to capacity to perform "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limited exceptions. She should

---

[1] The treating physician is identified in the ALJ's opinion (*e.g.*, Tr. 33), the initial brief of the plaintiff (Dkt. 14, at 25-26), the Commissioner's response (Dkt. 20, at 2), and plaintiff's reply (Dkt. 23, at 1) as "Dr. Vivek Saghal." Other portions of the plaintiff's initial brief indicate that the physician is named Dr. Sahgal. Correspondence by the physician indicates that the latter spelling is correct. (Tr. 720).

lift and carry twenty pounds only on occasion, she may lift ten pounds frequently. She can sit for six hours in an eight hour workday, and stand and walk for an equivalent period. She can understand and remember simple, routine tasks, carry out short and simple instructions, and make decisions consistent with simple, routine duties. She should not have high production quotas or rapid assembly line work, and should have little or no contact with the public. (Tr. 31-32). In light of this capacity, Bowman cannot return to her former work. (Tr. 35). She can, however, perform other light work such as a small products assembler or a hand packager. (Tr. 36).

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity

3

and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

Here, Bowman alleges that the ALJ erred in deciding to give the opinion of Dr. Sahgal little weight. Specifically, she contends that the ALJ erred in failing to note that there are some portions of Dr. Sahgal's notes which support his conclusions, and that the ALJ should have given more weight to a Global Assessment of Functioning (GAF) score as support for Dr. Sahgal's opinion.

As a general rule, an ALJ must consider and weigh all medical opinions.  *See* 20 C.F.R. § 404.1527(b)-(c) ("we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive").  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).

Social Security regulations identify three types of "acceptable medical sources," specifically (1) treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or who have had "an ongoing treatment relationship" with the claimant; (2) non-treating sources; *i.e.*, medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) non-examining sources, *i.e.*, medical sources who render an opinion without examining the claimant.  *See* 20 C.F.R. § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011).  The Commissioner generally gives more weight to the opinions of examining sources than to opinions of non-examining sources.  20 C.F.R. § 404.1527(c)(1).  And the Commissioner generally gives the most weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

The Commissioner will give the opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  An ALJ must state "specific, legitimate reasons" for declining to give controlling weight to the opinion of a treating physician.  *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).  "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by

medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation and citation omitted).

Absent assigning controlling weight, an ALJ must consider the six specific factors set out in 20 C.F.R. § 404.1527(c)(1)-(6) in determining how much weight to accord the opinion of a treating physician. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted). Although there is no requirement that an ALJ conduct a factor-by-factor analysis, his opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation and quotation marks omitted). When an ALJ completely rejects an opinion of a treating source, he must state specific and legitimate reasons for the decision. *Watkins*, 350 F.3d at 1300. Failure to apply the correct legal standards in weighing the opinion of a treating physician may result in a reversal and remand. *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995).

Dr. Sahgal opined that Bowman could not work because she "was not able to stand, sit, or lift for extended periods of time due to severe pain." (Tr. 34). The ALJ concluded that Dr. Sahgal's opinion should receive little weight, because it as "not well supported by his own treating notes." *Id*. While the ALJ's decision on this issue is not expansive *at this portion of her opinion*, it is apparent that the conclusion is well founded in the evidence. In deciding to extend little weight to Dr. Sahgal's opinion, the ALJ explicitly referenced 21 exhibits in the voluminous medical record (including identifying certain exhibits as duplicates).

Moreover, elsewhere in the opinion, the ALJ explicitly references various problems undercutting the weight to be accorded Dr. Sahgal's opinion. Earlier, in discussing the severity of Bowman's fibromyalgia, the ALJ noted that a "physical diagnosis of fibromyalgia is not well documented" in Dr. Sahgal's notes, and his "physical examination was essentially normal." (Tr. 30).  In addition, Dr. Sahgal omitted any indication of the "number of trigger tender points that are found in typical fibromyalgia cases." *Id.*

The ALJ also noted the absence, as of November 2010, of any treatment or medication for Bowman's depression and ADHD.

> Physical examination was unremarkable. On mental status examination, orientation as well as speech was grossly normal. Memory, judgment, and insight were intact. Thought process was logical and normal. Mood and affect were normal and appropriate. Diagnoses were anxiety disorder, attention deficit hyperactivity disorder, panic disorder, and respiratory disorder.

(Tr. 33 (extensive record citations omitted)). And "[s]ubsequent treating notes" from January 2011 to October 2012 "continued to document normal physical and psychiatric examinations." *Id.*

The psychiatric assessment notes from a visit in 2011 indicated that Bowman "Denies:  anxiety, depression, difficulty sleeping, compulsive behaviors, excessive angers." (Tr. 408). In another visit in 2012, Bowman told Dr. Sahgal that she was having "low back pain, fibromyalgia," but later reported that she had no "joint pain, joint swelling, muscle pain, muscle cramps." (Tr. 697).

The ALJ's decision regarding the weight to attach to Dr. Sahgal's opinion was not based solely on the essentially normal physical and mental evaluations. "In addition," the ALJ observed that even as Dr. Sahgal offered increasingly restrictive assessments of Bowman's condition, his prescription for "the claimant's Adderall remained the same dosage of 10 mg since November 2010." (Tr. 34).

Similarly, the court finds that the ALJ did not err in deciding to discount the result the single-instance GAF score shown in an Intake-Planning Session form from the Johnson County Mental Health Center. The ALJ did not ignore the GAF score, and in fact agreed that the score of 50 was significant. However, the ALJ ultimately concluded that the score

> alone cannot be used to determine the severity of one's functional ability, but rather should be considered along with other factors such as treating notes, mental status examination, and observation, etc. In this case, mental status examination was unremarkable according to the treating notes … as discussed above. Moreover, since GAF scores are subjective based on the evaluator, they are considered as part of the medical evidence as a whole.

(Tr. 34). Further, the one-time GAF assessment was predicated on Bowman's own subjective assessment of her condition, and (as noted elsewhere in the ALJ's opinion, and as discussed below) the person completing the intake form later concluded that Bowman had been deceptive with him as to the background of her case.

The ALJ also addressed the medical evidence in the record from the perspective of Bowman's credibility. Specifically, in discussing the severity of Bowman's PTSD, the ALJ noted (Tr. 30) the psychiatric notes made by the staff at the Johnson County Mental Health Center on June 7, 2011. According to the notes, Bowman was "confronted about the inconsistencies in her intake report." (Tr. 609). In particular, the notes indicate that Bowman became "tearful and defensive" when the staff noted that Bowman had failed to fully apprise the staff as to the events surrounding her interactions with the police, excluding information as to the number of thefts reported, the items stolen, her use of her son to steal items, and the existence of a charge of battery. Further, as noted by the ALJ, the notes state that Bowman previously stated that she had been abused by her biological father. The June 2011 patient notes indicate that Bowman "now seem[s] to suggest that some part of this behavior was consensual." *Id.*

Dr. Rodney McNeal (Ph.D.) of the Center separately contacted the police to obtain the original report "after it became apparent that [Bowman] had misled this writer about the facts around her recent arrest." (Tr. 615). McNeal also spoke with Bowman's probation officer. Finding that Bowman was subject to some court-supervised counseling or class requirement, McNeal expressed "concern that [Bowman

was attempting to manipulate the court by using this office to complete this court requirement." *Id.*

The court has reviewed the evidence from Bowman's visits with Dr. Sahgal, and finds that the ALJ had a reasonable basis for concluding that Dr. Sahgal's opinion lacked evidentiary support.

Bowman next argues that the ALJ erred in failing to perform a function-by-function assessment of her residual capacity, and indeed offered "no explanation in her decision as to what evidence supported each" of her conclusions, or "how these restrictions translated to her residual functional capacity assessment."(Dkt. 14, at 32).

The Commissioner should determine a claimant's residual functional capacity by conducting "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996). An ALJ's "[i]nitial failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case." *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (quoting, and adding emphasis, to SSR 96-8p, 1996 WL 374184, at *3). However, error will not arise merely by the ALJ's failure to include "an explicit function-by-function analysis" if the ALJ otherwise "thoroughly review[s] the medical evidence," and does not overlook a substantial limitation. *Id.* at 954, 956. On this subject, the Tenth Circuit in *Hendron* quoted its earlier observation in *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012):

> Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense.... [W]e cannot insist on technical perfection.

767 F.3d at 957.

The court finds that the ALJ here gave a sufficient basis for understanding her reasoning and gave a comprehensive assessment of the claimant's medical record. The ALJ carefully reviewed the record (Tr. 30-33) and provided an explanation for her conclusions. She noted Bowman's essentially normal physical examinations by Dr. Sahgal, and, as noted earlier, noted the lack of evidence in Dr. Sahgal's notes regarding her alleged mental impairments. Nevertheless, the ALJ incorporated some of Dr. Sahgal's recommendations into the capacity assessment, such as the limitations on workplace stress and contact with the general public. Moreover, in concluding that Bowman was "not fully credible due to inconsistency" (a conclusion which is not separately challenged by the plaintiff), the ALJ also examined Bowman's activities of daily living, noting that she takes care of her children, including her disabled nineteen-year-old son, who lives with her, does all the household chores, and goes to the grocery store, church, and her grandmother's house. Given the ALJ's extensive discussion of the medical record and the plaintiff's general condition, the court is able to follow her reasoning and finds that the functional capacity assessment is supported by substantial evidence.

Finally, the plaintiff argues that the ALJ erred in asking the vocational expert a hypothetical question which failed to incorporate all of her impairments, and that the

expert's conclusion was inconsistent with the Dictionary of Occupational Titles (DOT). But the plaintiff has not shown that the ALJ failed to incorporate any impairments or limitation which she otherwise found to exist. Rather, the ALJ's question was premised on the impairments which she found to exist, and as noted earlier, the court finds that assessment was supported by substantial evidence. Similarly, the plaintiff has failed to demonstrate any substantial discrepancy between the vocational expert's testimony and the DOT.

IT IS THEREFORE ORDERED this 25th day of August, 2015, that the judgment of the Commissioner is AFFIRMED.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE